UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| GREGORY T. SHAW, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:05-cv-003-RLY-TAB |
| ) | |
| DEPUTY DAVID GOODRICH, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Discussing Motion for Summary Judgment**

The defendants' unopposed motion for summary judgment is **granted.**[1] This conclusion rests on the following facts and circumstances:

1.  Gregory Shaw was arrested in Monroe County on October 10, 2004. In this civil rights lawsuit, Shaw contends that he was the victim of excessive force during the arrest and that one or more defendants failed to properly investigate this use of force. The defendants are Monroe County Sheriff Steven Sharp and Monroe County Deputy Sheriffs Goodrich, Karr and Sgt. Wilson.

---

[1] "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* "'It is well-settled that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). The plaintiff has not met this burden here, nor has he attempted to do so. Thus, the well-supported facts relied on by the defendants in support of their motion for summary judgment are accepted as true for the purpose of the court's resolution of that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which the plaintiff was notified.

      2.      The defendants seek resolution of the claims against them through the entry of summary judgment. The evidentiary record relative to the motion for summary judgment shows the following:[2]

      a.      On October 10, 2004, Deputy Goodrich found Shaw passed out and snoring in his car. The car was partially in the travel lane of Rockport Road. Goodrich detected the odor of alcoholic beverage as well as a box of beer on the floor board of Shaw's car.

      b.      Goodrich shouted several times to wake Shaw, but without success. Goodrich then reached in through the partially opened driver's side window, unlocked the door and shook Shaw several times to wake him. Shaw asked Goodrich why Goodrich was on Shaw's private property. When Goodrich asked Shaw if he knew where he was, Shaw said no.

      c.      Shaw then got out of his vehicle and asked if he should turn off his car, indicating Goodrich's squad car. Goodrich told Shaw that the vehicle was Goodrich's and Shaw sat back down in his own car. Shaw did not have his driver's license but did give Goodrich his information. Goodrich relayed Shaw's information to dispatch to run a warrants check on him.

      d.      Goodrich gave Shaw a portable breath test, which Shaw failed. It was Goodrich's intention to cite Shaw for public intoxication, as Goodrich did not see Shaw actually operate the motor vehicle. Goodrich asked if there was someone who could pick up his car. Goodrich had dispatch contact Shaw's brother to retrieve both Shaw and his car.

---

[2]"[A] party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Sanders v. Village of Dixmoor,* 178 F.3d 869, 870 (7th Cir. 1999) (quoting *Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir. 1983)). This must be done, insofar as a factual showing is concerned, through materials which satisfy the evidentiary requirements of Rule 56(e) of the *Federal Rules of Civil Procedure.* See *Koszola v. Board of Education v. City of Chicago,* 385 F.3d 1104 (7th Cir. 2004); *Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993)(if documents submitted in support of a motion for summary judgment do not satisfy the requirements of Rule 56(e), they must be disregarded). Properly supported material facts as offered by the movant in a motion for summary judgment are accepted by the court as true. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This enables the parties to properly utilize the role of Rule 56, which is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990).

   e. At about this point, dispatch confirmed a felony warrant. Goodrich asked Shaw several time to exit his vehicle. After three requests to exit the vehicle, Shaw shut the door and started the car. Goodrich drew his weapon, pointed it at Shaw and told him multiple times to stop the vehicle. Shaw turned the wheels toward Goodrich, revved the engine and drove directly at Goodrich. Goodrich narrowly escaped being run over by spinning down the side of the car. Goodrich fired one round through the back of the car. Shaw was not struck by the bullet. Goodrich returned to his squad car to give chase.

   f. Shaw lead police on a high speed chase reaching speeds of 80 to 90 miles per hour. He disregarded multiple traffic control devices. The chase seemed to have ended when Shaw hit a tree. Deputy Karr, who had joined the chase, pulled in behind Shaw's vehicle. As Karr was attempting to get out of his car, Shaw put his car in reverse and drove it at Karr. Shaw struck Deputy Karr's squad car in the driver's door, injuring Karr. Shaw continued fleeing, striking more trees, a mail box and another vehicle. Shaw then hit a building; this ended the chase.

   g. Deputies Goodrich and Karr approached Shaw's vehicle. Shaw continued to try to get the car moving again. At first, the driver's side door would not open, so Karr broke out the window with his flashlight. Goodrich was then able to get the door open and the deputies where able to take Shaw into custody. Shaw was placed faced down on the ground and Karr held him down with a knee in his back. Shaw was then handcuffed without further incident.

   h. After Shaw was apprehended, Sgt. Wilson was called to the scene. Wilson asked Shaw why he ran and Shaw replied that he did not want to go to jail.

   3. Shaw's federal claims are asserted pursuant to 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Even when the constitutional right is sufficiently identified, § 1983 requires personal responsibility to support a viable claim. *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001). Personal involvement is established when the supervisor "acts or fails to act with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at [the supervisor's] direction or with [his] knowledge and consent." *Gossmeyer v. McDonald,* 128 F.3d 481, 494 (7th Cir. 1997) (citations and quotations omitted).

   4. Shaw's condition inside the vehicle parked partially in a roadway justified the initial contact with Shaw. *Whren v. United States,* 517 U.S. 806, 810 (1996) (decision to stop and detain motorists is reasonable where there is probable cause to believe that a traffic violation has occurred). The claims against defendants Goodrich and Karr are that they used constitutionally excessive force in seizing Shaw. Under prevailing Supreme Court precedent, "*all* claims that law enforcement officers have used excessive force--deadly or

not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor,* 490 U.S. 386, 395 (1989) (emphasis in original). *Accord: Brosseau v. Haugen,* 125 S. Ct. 596, 598 (2004) (citing *Graham* and applying this same standard); *Lawrence v. Kenosha County,* 391 F.3d 837, 843 (7th Cir. 2004) (same).

5. As to the claim against defendant Goodrich, the dispositive question is whether Shaw was "seized" by Goodrich firing at Shaw's vehicle immediately after Shaw turned the wheels of his vehicle toward Goodrich and tried to run Goodrich down. A plaintiff bringing an excessive force claim must show both that a seizure took place and that it was unreasonable. *See Kernats v. O'Sullivan,* 35 F.3d 1171, 1177 (7th Cir. 1994); *Donovan v. City of Milwaukee,* 17 F.3d 944, 948 (7th Cir. 1994). The Supreme Court held in *California v. Hodari D.,* 499 U.S. 621, 626-27 (1991), that there is no seizure if an officer's show of force does not either physically touch the individual or compel him to submit to the officer's authority. This rule has led a number of circuits to conclude that no seizure took place where the officers' shots neither struck nor stopped the plaintiff. *See Adams v. City of Auburn Hills,* 336 F.3d 515, 519-20 (6th Cir. 2003) (rejecting excessive force claim because shooting at car's tires was not seizure); *Schulz v. Long,* 44 F.3d 643, 647-48 (8th Cir. 1995) (officers did not seize armed individual in basement with errant shots; seizure occurred only when shot struck and stopped him); *Bella v. Chamberlain,* 24 F.3d 1251, 1255-56 (10th Cir. 1994) (no seizure where officers fired at helicopter but failed to stop plaintiff); *Cole v. Bone,* 993 F.2d 1328, 1332-33 (8th Cir. 1993) (no seizure when officers' shots failed to stop plaintiff's car; seizure occurred only when plaintiff was shot and killed); *Carter v. Buscher,* 973 F.2d 1328, (7th Cir. 1992) (seizure took place only when police shot suspect, not when officers fired earlier shots at him and missed); *see also United States v. Bradley,* 196 F.3d 762, 768 (7th Cir. 1999) (officer seized plaintiff by firing single shot into his car that forced plaintiff to pull over). Here, Shaw was not struck by the deputy's bullet, and Shaw did not submit to police authority until the firing had ceased--to the contrary, he responded to the shot by continuing to flee, leading to a high speed chase, and continued to resist seizure. He therefore was not seized, and could not have been the victim of excessive force by Deputy Goodrich.

6. As to Shaw's claim against Deputy Karr, force was used by Karr only after Shaw had fled from Deputy Goodrich, after Shaw had twice used his vehicle to run down both Goodrich and Karr, after Shaw had struck a garage with his vehicle and continued to try to use the vehicle as both a weapon against the police and a means of escaping capture. Karr's act in breaking out the window of Shaw's vehicle was not a "seizure" of Shaw for the same reason as Goodrich's act of firing a single shot at Shaw's vehicle was not a seizure. Karr also placed his knee on Shaw to hold him on the ground during handcuffing, but this was an entirely reasonable use of force to prevent Shaw's further movement to either injure officers or escape from them.

7. The claim against Det. Wilson is that he failed to adequately investigate the actions of Goodrich and Karr. The absence of personal involvement on the part of Sgt. Wilson in the incident and activity whereby Shaw first encountered police officers and was eventually subdued and arrested is fatal to the claim against Wilson. The only contact

between Shaw and Wilson occurred after Shaw had been arrested and consisted solely of a question by Wilson directed to Shaw and of Shaw's answer to that question. Although Wilson may have later investigated the events leading to Shaw's apprehension, it was too late for actual intervention to have prevented the incident from occurring, and Shaw had no due process or other right to a more favorable response from Wilson. *Kernats v. O'Sullivan,* 35 F.3d 1171, 1182-83 (7th Cir. 1994); *Love v. Bolinger,* 927 F.Supp. 1131, 1137 (S.D.Ind. 1996).

        8.      Shaw's federal final claim is against Sheriff Sharp.

        a.      If this claim is asserted against Sheriff Sharp in his official capacity, it fails for two reasons: The first reason is that there is no evidence that it is a custom, practice or policy of the Monroe County Sheriff's Department to use constitutionally excessive force in making arrests. *Billings v. Madison Metro. Sch. Dist.,* 259 F.3d 807, 817 (7th Cir. 2001) (citing *McCormick v. City of Chicago,* 230 F.3d 319, 324 (7th Cir. 2000)). The second reason is that the failure to establish a constitutional violation by an employee eliminates any claim against a municipal employer. *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir.) ("it is well established in this Circuit that a municipality's liability for a constitutional injury requires a finding that the individual officer[ ] [is] liable on the underlying substantive claim"), *cert. denied*, 531 U.S. 957 (2000).

        b.      If this claim is asserted against Sheriff Sharp in his individual capacity, it fails for the same reason–lack of personal participation–as does the claim against Sgt. Wilson.

        9.      Shaw's complaint includes a claim under Indiana state law against the defendants. The retention of jurisdiction over the pendent state law claims is permissible under 28 U.S.C. § 1367(a). The retention of such jurisdiction is appropriate in this case. *Lawrence v. Kenosha County,* 391 F.3d 837, 844 (7th Cir. 2004). The undisputed fact pertinent to any pendent state law claim is that Shaw did not file a notice of tort claim with the Sheriff's Department prior to bringing suit. This failure represented his noncompliance with the notice provision of the Indiana Tort Claims Act, IND. CODE § § 34-13-3-1, *et seq*. The failure to comply with the Indiana Tort Claims Act is a jurisdictional bar to the filing of state law claims. *Teague v. Boone,* 442 N.E.2d 1119, 1120 (Ind.App. 1982). Thus, no court would have jurisdiction over the pendent claims under Indiana state law, and those claims must be dismissed for lack of jurisdiction.

        **IT IS SO ORDERED.**

Date: 09/26/05

                              RICHARD L. YOUNG, JUDGE
                              United States District Court
                              Southern District of Indiana